Chandler Products Corporation v. Commissioner.
Chandler Prods. Corp. v. Commissioner
Docket No. 13990.
United States Tax Court
1948 Tax Ct. Memo LEXIS 87; 7 T.C.M. (CCH) 669; T.C.M. (RIA) 48183; September 23, 1948
*87 Isador Grossman, Esq., 1500 Midland Bldg., Cleveland, Ohio, and Charles F. Taplin, Jr., Esq., for the petitioner. Clarence E. Price, Esq., for the respondent. LEMIRE Memorandum Findings of Fact and Opinion The respondent determined deficiencies in petitioner's income and excess profits taxes for the years 1941 and 1942, as follows: Excess
Year
Income Tax
Profits Tax
1941
$2,424.94
$10,108.33
1942
40,054.37 The deficiencies arise out of a partial disallowance of deductions claimed for compensation paid four of petitioner's executive officers during those years. The sole question involved is whether this compensation is reasonable and deductible as ordinary and necessary expense. Most of the facts have been stipulated and the written stipulation is incorporated herein by reference. Findings of Fact The petitioner is a corporation organized under the laws of the State of Ohio, in 1929, for the purpose of manufacturing and selling screws, bolts and fasteners, and other similar articles, with its principal place of business in Cleveland, Ohio. Its federal tax returns were made on an accrual basis and were filed with the collector *88 of internal revenue for the 18th district of Ohio, at Cleveland. The four executive officers whose compensation is here in dispute were F. C. Chandler, Sr., chairman of the board of directors, and president after October 1942; F. C. Chandler, Jr., president until October 1942, C. E. Needham, vice president and treasurer, and J. R. Swank, officer manager, auditor and assistant treasurer. F. C. Chandler, Sr., was one of the petitioner's organizers and its principal stockholder. He financed its operations from its inception. His son, F. C. Chandler, Jr., was the second largest stockholder. More than 80 per cent of the petitioner's stock was held by members of the Chandler family. F. C. Chandler, Sr., served as chairman of the petitioner's board of directors and F. C. Chandler, Jr., as president of the petitioner until the latter's death in October 1942. F. C. Chandler, Sr., then became president and served in that capacity until his death in February 1945. He devoted his full working time to the petitioner from the date of its organization. He looked after the financing, purchases, plant layout and expansion, and other matters relating generally to the operation of the business. *89 From time to time he and F. C. Chandler, Jr., lent the petitioner money amounting altogether to upward of $30,000 to meet payrolls and other expenses. Prior to the petitioner's organization F. C. Chandler, Sr., had been general manager of the Lozier Motor Car Company and chief executive officer of the Chandler Motor Car Company. In the latter employment his salary and bonus had amounted to as much as $100,000 per annum. He received no compensation from the petitioner prior to 1939. F. C. Chandler, Jr., served as president and treasurer of the petitioner from its inception until his death in October 1942. He, too, had been employed by the Chandler Motor Car Company for some time before becoming connected with the petitioner. He had received a salary of $8,000 as a member of the Cleveland division of that company. C. E. Needham was a graduate mechanical engineer. Prior to his employment by the petitioner he had been employed by the Automatic Refrigeration Company for a few years and for a short time thereafter was engaged in the drop forging industry and later operated a sales agency. He was placed in charge of petitioner's sales, outside the Detroit area; made estimates of costs, *90 selling prices and quotations; and worked on the development of techniques and engineering for the improvement of processes used and products sold by the petitioner. He was active in the development of an improved process of manufacturing "cold-headed, roll-threaded" hold-down screws for use in aircraft engines, which was perfected in 1940. He was considered a very able, high-class man by those in his own industry and in the aircraft engine industry. J. R. Swank was a graduate accountant and had been an instructor in accounting at Brandon Institute. Just prior to the organization of petitioner he had been in charge of bookkeeping at the Cleveland Automobile Company and the Chandler-Cleveland Motors Corporation. He was paid a salary of $3,000 a year by the latter company. From the date of petitioner's organization in 1929 he was employed as its auditor and office manager in charge of general accounting. In 1931 he became assistant treasurer of the petitioner and had charge of all books of records, and also purchasing of all supplies and material, except steel. He acquired a few shares of the capital stock of petitioner. After the death of F. C. Chandler, Jr., in 1942, he became treasurer *91 of the company. During the years 1941 and 1942 his work was much more burdensome than in previous years due to the problems with respect to priorities, allocation of materials, supplies, labor, personnel and the increase in the business and output of the company. He devoted full time to petitioner's business. He was regarded as a high-class and able man in his field. The salary and bonus paid to each of these officers in the taxable years 1941 and 1942, as shown in the petitioner's books and reported in its income tax returns, and the amount allowed as a deduction by the respondent in his deficiency notice, were as follows: Name
Year
Salary
Bonus
Allowed
F. C. Chandler, Sr.
1941
$12,000.00
$ 5,000.00
$10,000.00
1942
22,250.00
8,000.00
11,000.00
F. C. Chandler, Jr.
1941
14,903.33
8,000.00
12,500.00
1942
21,375.02
3,000.00
10,833.34
C. E. Needham
1941
9,250.00
13,500.00
16,400.00
1942
16,250.00
13,500.00
17,400.00
J. R. Swank
1941
5,680.00
7,000.00
9,060.00
1942
9,358.37
7,000.00
10,000.00 The amount of $21,375.02 shown in the petitioner's books as salary paid to F. C. Chandler, Jr., in 1942 included $2,000 paid *92 to him by the petitioner at the outset of a trip which he made to some place in the West for his health and had no connection with the petitioner's business. The 1941 and 1942 bonuses were paid in June and December of each year pursuant to authorization by the petitioner's board of directors. For the prior years of its existence from 1930 to 1940, inclusive, the petitioner paid these four officers compensation as follows: Year
F. C. Chandler, Sr.
F. C. Chandler, Jr.
C. E. Needham
J. R. Swank
1930
$7,343.75
$7,050.00
$2,975.00
1931
6,181.25
5,990.00
2,845.00
1932
4,109.40
4,109.40
2,363.00
1933
3,284.10
3,284.10
2,080.60
1934
3,324.00
3,324.00
2,292.00
1935
3,628.70
3,628.70
2,506.50
(bonus 304.70)
(bonus 304.70)
(bonus 210.50)
1936
3,958.20
3,868.20
2,673.00
(bonus 355.00)
(bonus 340.00)
(bonus 235.00)
1937
5,550.00
5,257.50
3,720.00
(bonus 500.00)
(bonus 470.00)
(bonus 325.00)
1938
5,370.00
5,215.00
3,547.50
1939
$2,625.00
5,520.00
5,400.00
3,840.00
(bonus 230.00)
(bonus 225.00)
(bonus 175.00)
1940
9,000.00
8,640.00
6,900.00
4,560.00
(bonus 3,000.00)
(bonus 9,500.00)
(bonus 4,500.00)
*93 In addition to the above amounts bonuses in the form of shares of stock were paid to C. E. Needham and J. R. Swank in 1932 and 1933. The petitioner's net sales and net profits before federal taxes, and before renegotiation for 1942 were as follows: Year
Net Sales
Net Profits
1930
$ 25,664.38
Loss
($ 43,754.38)
1931
124,266.41
Loss
( 39,191.90)
1932
99,428.07
Loss
( 30,011.96)
1933
180,477.59
Loss
( 17,645.05)
1934
229,318.83
Loss
( 3,951.00)
1935
284,889.81
20,942.53 1936
343,766.36
32,969.09 1937
493,729.41
71,537.78 1938
257,609.76
Loss
( 6,991.71)
1939
502,921.66
15,053.21 1940
738,355.36
108,297.81 1941
1,195,581.41
419,115.48 1942
2,294,125.60
1,219,862.41 Approximately 78 per cent of petitioner's 1942 sales were on war contracts. The petitioner paid dividends out of earnings of $687.40 in 1938, $2,577.75 in 1939, $30,933 in 1940, $99,905 in 1941, and $37,970 in 1942. The petitioner's net profits were $157,338.03 in 1941, after federal taxes, and $78,178.27 in 1942, after federal taxes and renegotiation. The total compensation paid to its four above-named officers by the *94 petitioner in 1941 and 1942 was reasonable compensation for services rendered by them in those years. Opinion LEMIRE, Judge: Our only question here is to what extent, if any, the compensation which the petitioner paid to its four officers in 1941 and 1942 was excessive and unreasonable in amount. The evidence is that the petitioner's business was built largely upon the industry and skill of these officers. Under their management the petitioner was able to achieve a position of leadership in a highly competitive field. While its large increase in business in 1941 and 1942 was due to the war, it undoubtedly resulted in an increase in the duties and responsibilities of the officers. Comparatively low salaries were paid to the officers during petitioner's development period with the understanding that they would be increased when the profits of the business justified it. The petitioner's record of earnings and dividend distributions refutes any inference that it might have followed a policy of distributing profits in the guise of compensation to its officer-stockholders. For instance, in 1940, 1941 and 1942, when its net profits after federal taxes, and after renegotiation in *95 1942, were $66,885.94, $157,338.03 and $78,178.27, respectively, it paid dividends in the respective amounts of approximately $31,000, $100,000 and $38,000. On the evidence as a whole, we are of the opinion, and have so found above, that the compensation paid to its officers by the petitioner in 1941 and 1942 constituted reasonable compensation for the services performed by them. The amount of $21,375.02 shown in the petitioner's books as salary to F. C. Chandler, Jr., in 1942 (his bonus for that year was $3,000) includes $2,000 which the respondent has determined in his deficiency notice to be a gift and not compensation for services performed. There is no evidence before us on which we can find that the payment was intended as compensation and not a gift, as characterized by the respondent in his deficiency notice, and accordingly the respondent's determination in this respect is sustained. Decision will be entered under Rule 50.